## HILLIARD AND WIFE v. BINFORD'S HEIRS AND ADMINISTRATORS.

1. Although a will may be inoperative as to the real estate of the testator, because it is not attested by witnesses as directed by the statute, it may notwithstanding, be good as to the personalty.
2. An order of the orphans' court, which recites that a citation issued, as required by the statute, and thereupon orders that the will be admitted to probate, is at most only voidable, and cannot be collaterally impeached; but must be avoided, if erroneous, in a direct proceeding.
3. At the common law, in order to put the wife to elect between a legacy given by the will of her husband, and the right to dower, it should appear in express terms, or by clear and manifest implication from the provisions of the will, that the legacy was intended to be a substitute for dower ; if this is not apparent, she will be entitled to both.
4. Where a will is good as to the personalty, but is not so attested as to pass the real estate, the provisions in respect to the latter will be considered as blotted out, and the testator will be adjudged to have died intestate as to the realty.
5. The acts of 1806 and 1812, when considered together, reverse the rule of the common law, which presumes a devise to be in addition to dower, unless the reverse clearly appears ; and if the widow does not elect to waive the testamentary provision within one year after the probate of the will, as these statutes direct, she shall lose her right to dower, unless it plainly appear by the will, that the testator intended it in addition to dower.
6. A devise or bequest of either *real or personal estate*, by the husband to the wife, is sufficient to put her to an election, under the acts of 1806 and 1812, and if she does not waive the testamentary provision, she will be barred of her right to dower. [ORMOND, J., dissenting on this point.]

7. The statutes in respect to dower are to be considered as parts of an entire system, and to be construed *in pari materia.*

Writ of Error to the Circuit Court of Limestone.

THE plaintiffs in error filed their petition, setting forth that the female petitioner was the wife of the intestate, Binford, who died in the year 1835; at the time of his death and previously, the intestate resided in Limestone, and died seized and possessed of a tract of land situate in that county, which the petitioners particularly describe, and alledge to be the place of his residence : *Further*, that intestate left two children, who are his only heirs, viz : a son named Alexander, of whom Addison Binford is guardian, and a daughter named Mary Susan, an infant, who intermarried with John W. Key, who is also in his minority, of whom Hiram H. Higgins is guardian—all residing in Limestone county. It is also alledged, that Addison D. Binford is the administrator, and that the heirs are in possession of the land. The petition concludes with a prayer that the dower of the female petitioner may be allotted her in the lands described in it. Process was accordingly issued and served on the administrator and heirs, and the general guardians were appointed guardians *ad litem* of the heirs.

. The petition was heard upon an agreed statement of facts. It was admitted that the facts stated in the petition are true, also, that the county court of Limestone, on the 14th October, 1835, ordered a citation to issue, requiring Thos. Fearn, Peter Binford, and Martha Ann Binford, to appear before the judge of that court, on the 26th day of that month, to show cause why the written and nuncupative will of the intestate should not be proved and admitted to record. Citations are found in the transcript tested of the same day with the order, one requiring the sheriff of Limestone to cite M. A. and P. Binford ; and the other requiring service to be made on T. Fearn by the sheriff of Madison ; and due return of each to be made, on the day appointed by the order. Upon the 26th October an entry was made, in which it is recited, that "the written will of John M. Binford, deceased, was produced in open court, and it appearing that due notice has been given as required

by law, and the signature thereto being duly proved by the oaths of Addison Binford, R. T. Maury, William Capell, and Moses Harraway, to be the proper hand-writing of said John M. Binford, deceased, which is ordered to be recorded." "And the said Addison Binford, R. T. Maury, William Capell, and Mosely Harraway being duly sworn, depose and say that they were called upon by John M. Binford, during his last sickness, at his residence in this county, where he had resided for more than ten days previous to his death, to take notice, or bear testimony of the following as his will." [Here follows a copy of the nuncupative as well as written will, which the witnesses attempted to establish.] "And it appearing that due notice has been given to the widow and next of kin of said deceased, as required in the statute in such cases made and provided, and that more than fourteen days has elapsed, and not six months, since the death of the said John M. Binford. All which is ordered by the court to be recorded accordingly." The written will, after expressing the testator's wish as to the disposition of his estate, and the appointment of Thomas Fearn as executor, concludes thus— "January 13, 1833.

Witness,          J. M. BINFORD, (seal.)"

By the nuncupative will, the testator desired his wife to live upon his farm and raise his children, and gave to her his watch and riding horse, and made his last child, Thomas Peyton, an equal heir, bequeathed a rifle to one of his brothers, and made another his executor—expressing a wish that Dr. Maury and wife should live with his wife and children, free of charge for board. This is the substance of the nuncupation.

The written will is in form a disposition of the entire real and personal estate of the testator. For his wife he provided as follows: "I give to my wife, Martha Ann Binford all the property that I got by her, in fee simple; said property being one negro girl by the name of Sally; $300, being money for which I sold her land lying in Lauderdale county, one pair of oxen, worth $30; one bedstead, bed and furniture, and one black walnut dining table." After disposing of his lands among his children, providing for the employment of his slaves, he proceeds thus: "More concerning my wife,

Martha Ann, I further desire, after my debts are paid, that my children shall pay to my wife Martha Ann, $100 annually, so long as she remains my widow."

It was agreed by the parties, that Mrs. Hilliard had received from the estate of the testator, all the property bequeathed to her by both wills, with the exception of the watch, and in addition two cows and calves, some books, together with hire for the slave and interest on the $300: that she lived on the plantation occupied by the testator, and received her support therefrom after his death until the marriage of herself and co-petitioner, in May, 1839. *Further*, that she has never received any dower in the real estate of the testator, nor at any time appeared before the circuit court and signified her dissent to his will.

The agreed case also contains a copy of the testator's estate, exclusive of the lands mentioned in the petition, and 80 acres situated in another county, supposed to be worth about $1 25 per acre, the aggregate valuation is $7,541 75. Upon these facts, the court was opinion that the prayer of the petitioners should not be granted, and thereupon dismissed their petition, rendering a judgment against them for costs.

E. J. JONES, for the plaintiffs in error, insisted, that a citation served upon the parties in interest is *indispensable* to the regularity of the probate of a will, unless it is taken at a stated session of the orphans' court, in which case proof of reasonable notice will be a substitute for a formal citation, or unless the deceased has no widow or kindred resident in the State. Written wills might be then proved without citation. [Clay's Dig. 303, § 34; 597, § 3; 4 Ala. R, 248.] Here the probates were not taken at a stated session of the court, and the record does not show that citations issued.

The orphans' court is one of limited jurisdiction, and the record must show every thing that is necessary to authorize its action. [2 Stew. Rep. 331; 3 Stew. & P. Rep. 355; 6 Porter's Rep. 219; 8 Porter's Rep. 375; 3 Ala. Rep. 670; 5 Id. 117; 19 Johns. Rep. 39.] But if a court proceeds without jurisdiction, whether limited or general, its acts are void. [7 Porter's Rep. 37; 15 Johns. Rep. 141.] The recital in the orders admitting the wills to probate, is no evidence that ci-

tations ever issued. [1 Stew. Rep. 412; 8 Porter's R. 375; 4 Ala. R. 248; 5 Id. 117.]

Conceding the probates to be regular, and still it is insisted that Mrs. Hilliard is entitled to dower, because the will is not executed in such manner as to be an operative devise of lands—a written will cannot be revoked by a nuncupation, nor will lands pass by a will not written and attested as the statute prescribes. [Clay's Dig. 596, § 1: 1 Coxe's R. 241; 1 P. Wms· Rep. 247, 343; 7 Porter's·R. 394; 1 Dana's Rep. 340; Clay's Dig. 597, § 5.]

To bar the widow of dower at common law, the devise to her must be given in lieu of dower, *expressly*, or it must be *inconsistent* with a claim of dower; where this is the case, she will be put to her election. But even there the inconsistency must be clear and conclusive. [7 Porter's Rep. 19; 6 Ala. Rep. 236; 2 Dana's Rep. 341; 2 Johns. Ch. R. 448; 4 Id. 9; 7 Cow. R. 287.] A devise to the wife in lieu of dower, or all claims on her husband's estate, will not exclude her from a share of a devise to some other person which happens to fail. [3 Ves. jr. Rep. 331, 491; 1 Dana's R. 203.] In this case, it is clear that the bequest to the wife is not made in such terms as to put her to an election.

Here the devise is void, or so executed as not to pass real estate; it cannot be used as evidence against the wife, upon an application for dower, and of course does not cast upon her the duty of electing. [1 Cox's Rep. 241; 8 Ves. Rep. 481; 2 Ves. & B. Rep. 126; 3 Ves. jr. R. 331, 491.]

It is provided by our statutes, that all estate not devised shall go in the same way as if the deceased had died intestate. [Clay's Dig. 168, § 2; 597, § 7.] And the acts in respect to election are declaratory of the common law. [Clay's Dig. 172, § 3; 7 Porter's R. 19; 6 Ala. R. 236.]

J. W. McClung, for the defendants in error.

COLLIER, C. J.—The act of 1806 makes it indispensable to the validity of a will which disposes of real estate, that it should " signed by the testator or testatrix, or by some person in his or her presence, and by his, or her direction, and attested by three or more respectable witnesses, subscrib-

ing their names thereto, in the presence of such devisor."—
[Clay's Dig. 596-7, § 1.]　After providing the essential con-
stituents of a nuncupative will, the same statute, enacts that
"no probate of any nuncupative will shall be taken, or letters
testamentary granted thereon, till after the expiration of four-
teen-days from the time of the decease of the testator, nor till
citation hath issued to call in the widow and other person or
persons principally concerned, if resident in this State, that
they may appear and contest such will, if they see cause.—
[Clay's Dig. 597, § 3.]　By the eighth section of the act of
1821, it is enacted, that on application for the probate of any
will, the clerk of the county court shall issue citation, requir-
ing the sheriff to summon the widow or next of kin of the
deceased to appear at some return day in the process named,
(or appear at the next stated session) and show cause if they
have any thing to alledge against such application, &c. ; or
on satisfactory proof that the deceased has no widow or kin-
dred resident in the State, the application may be heard and
determined ; the court at any stated session may hear and de-
termine such application, though no citations may have been
executed or issued on proof of reasonable notice thereof, or on
proof, that the deceased has no widow or kindred resident in
the State.　[Clay's Dig. 303, § 34.]　The act of 1806 fur-
ther provides, that "no will in writing or bequest therein of
goods and chattels, shall be revoked by any subsequent will,
codicil or declaration, unless the same be in writing." *Again:*
Any person interested in a will may contest the same by bill
in chancery within five years after its probate ; but after the
expiration of that period, the original probate shall be conclu-
sive on all parties concerned ; saving however to infants, &c.
the like period for contestation after the removal of their re-
spective disabilities.　[Clay's Dig. 597, § 5 : 598, § 15.]

There can be no question but a will which professes to
dispose of the real and personal estate of the testator may be
good as to the latter, though it is not executed so as to pass
the realty.　[Shields, et al. v. Alston, 4 Ala. Rep. 248, 255.]
"Nor is it essential to a will of personal property, that it
should be signed or sealed by the testator, and attested by
subscribing witnesses; although it be written by another, if

shown to have been approved by him, or written agreeably to his instructions, it is entirely sufficient.    (Ib.)

In McGrew v. McGrew, 1 Stew. & Port. Rep. 30, the question was as to the validity of a will, and it was said by the judge who delivered the opinion of the court, " The will I apprehend would be *prima facie* void, if from its face, it was apparent that the testator intended to do some further act to give it effect.    But nothing of this kind appears from the face of the will in question.    It does not appear that the testator intended to have it subscribed by witnesses.    It concludes, " witnesss my hand and seal," and is signed and sealed by the testator, without saying in presence of witnesses, or leaving a void space for them to subscribe their names."    In noticing the absence of an attestation clause, and a blank for the names of subscribing witnesses, it was never intended to affirm, that if these had appeared at the foot of the will, they were so indicative of the testator's intention, that it should not be operative, unless it was consummated so as to pass the land ; for it was clearly competent to establish such will as to the personalty.    But it was rather designed to show that no such argument could avail any thing in that case, because there was no foundation upon which it could rest—it not being adapted to the facts, its effect was not considered.    We need not inquire in this case, whether a will is inoperative, which professes to dispose of both real and personal estate, but is so imperfectly executed that it will not pass the former, unless some extrinsic proof is given to show that the party intended to die testate, at least in respect to his personalty. The probate, whether strictly in conformity to law, or not, cannot be vacated in an indirect proceeding, and the will must be regarded as effectual to the extent to which the law permits it to operate until it is set aside.    In the case last cited, it was further said, " We must presume that a court of competent jurisdiction acted correctly, unless the contrary appears ; that it had sufficient evidence to authorize an allowance of the will ; and if the party contesting the same was dissatisfied, he should have taken his exceptions, and brought the evidence before this court."

Shields, et al. v. Alston, 4 Ala. Rep. 248, was brought here by writ of error, at the instance of the parties in interest

to revise an order admitting a will to probate, and we said the act of 1821, requires "the next of kin to be informed of the application for the probate of the will of a deceased relative, and only permits it to be heard and determined without notice, when there is no kindred resident in the State." It was not there decided in general terms, that the recital in the record that "due and proper notice was given to the next of kin of the testator," of the application to prove his will, was no evidence of the fact of notice; but only that it did not authorize the conclusion that one of the next of kin then in his minority, had been legally notified, or waived notice—there being no notice in the record, and he being incompetent to dispense with it.

In Hill's Heirs, &c. v. Hill's Ex'rs, 6 Ala. R. 166, the effect of the 5th section of the act of 1821, is considered. That section enacts that "the judge of each orphans' court shall have power within the county, to take the probate of wills, grant and repeal letters testamentary, and letters of administration," &c. [Clay's Dig. 303, § 31.] "Here," it is said, "is an authority to annul letters testamentary, which may have issued unadvisedly, or which subsequent occurences make it proper should be recalled. The statute does not expressly authorize the orphans' court to set aside the probate of a will which it has allowed, yet we apprehend that it is entirely competent, in the absence of legislation to the contrary, for that court to set aside the probate of a will which it has allowed without proof, or upon insufficient proof, and without notice to the widow and next of kin, as directed by the 8th section of the act of 1821. This being the case, the plaintiff in error should apply to the judge of the orphans' court for a citation to the executor and other parties in interest; to show cause why the probate of the will should not be be vacated, and the letters testamentary repealed. Upon such a proceeding, the redress sought can be obtained." The writ of error was sued out by two of four legatees named in the will, but as there was no contestation upon offering the will for probate, the plaintiffs in error were not made parties, and it could not be assumed that they would be benefitted by a reversal of the order of the orphans' court; consequently the writ of error was dismissed. In Bothwell, et al. v. Hamilton,

8 Ala. Rep. 461, it was decided, that where the probate has not been objected to in the orphans' court, and subsequent proceedings have been had under the impression that it was genuine, it cannot be incidentally questioned. That case reaffirms Hill's Heirs v. Hill's Ex'rs, *supra,* and adds, that if the orphans' court refuses to act upon an application to revoke or annul the probate of a will, or having acted, misapprehends the law, a " a writ of error may be prosecuted."

It is clearly inferrable from this view of the law, that a citation, or notice, is necessary to warrant the orphans' court in admitting a will to probate where the deceased leaves a widow, or kindred resident in this State. And it is indicated by the cases cited, that if the record does not show that this course was pursued, or that there was no person residing in the State entitled to notice, the order admitting the will to probate will be reversed on error, if the writ is sued out within three years. [See also, Boyett, et al. v. Kerr, 7 Ala. Rep. 9.]

The written will we have seen was not executed as the statute directs, so as to pass lands ; and even if lands could be disposed of by a nuncupative will, the nuncupation does not profess to devise them. At most, the latter is very deficient as to the objects upon which it operates, so much so, that if it can be effectual for any purpose, we should be inclined to regard it as a codicil. But if the written will be sustained, and in the present posture of this case, we think it must be considered good as to the personalty, then the nuncupation cannot operate. For the act of 1806, above cited, declares that no will in writing, or bequest therein of goods and chattels, shall be revoked by a subsequent or unwritten " will, codicil, or declaration," with a saving in favor of soldiers and mariners, to dispose of and bequeath their goods and chattels as they could previous to the passage of the act.

Without stopping to consider the effect of the recital in the order by which the wills were admitted to probate, or whether it can be assumed that it was not made at a " stated session" of the orphans' court, we think it inferrable from the cases cited from the 6th and 8th Ala. Rep. that the irregularity in the order does not make it void, but merely

124

voidable; and it can only be vacated by some direct proceeding. In Wyman, et al. v. Campbell, et al. 6 Porter's R. 219, we considered quite at large the distinction between judgments, orders, and decrees, which were void, and those which were voidable, and the effect of each. We there said, "that the judgment of a court having jurisdiction of the parties, and the subject matter, is conclusive upon parties and privies; and this though the record may abound with irregularities which would authorize its reversal by a revising court;" and if the proceedings be *in rem*, jurisdiction will attach *quoad* the thing, though the person of the defendant be not reached by process. *Further*, "Let the review we have taken of the authorities suffice to show,that judicial sentences, whether designated as judgments in the courts of law, decrees in chancery, or orders of an orphans' court, if not founded in a usurpation of power, are conclusive until reversed by a higher tribunal." The case of Wiley & Gayle v. White & Lesley, 3 Stew. & P. Rep. 355, was noticed, and held not to be law, so far as it "assumed that the proceedings of the orphans court may be collaterally impeached for an omission to disclose by its record, an observance of every thing enjoined by statute, upon the ground that it is a courtof limited jurisdiction. This reasoning," we said, "only proves the order to have been voidable, if the authority of the court was shown, and would hold good on an appeal or writ of error—but does not show that it was void *per se*, so as to subject it to an indirect attack." In Couch and another v. Campbell, et al. 6 Porter's Rep. 262, it was held that the jurisdiction of the orphans' court over the real estate of an intestate, is put in full exercise, when that court makes an order for a citation to issue to the heirs to show cause why the same should not be sold upon the suggestion of the administrator, for the payment of debts due by the intestate. By a parity of reasoning, we think that the jurisdiction attached, at least in respect to the written will when the court took measures to examine into its validity by ordering citations to issue to show cause why it should not be admitted to probate. It results from this view that neither the will, nor its probate, can be regarded as a nullity. We now proceed to consider whether the wills, and the accep-

tance by the widow of the bequests of personal property bar her claim to dower.

In Adsit v. Adsit, 2 Johns. Ch. R. 448, Chancellor Kent, considered at length, and with reference to the leading English cases, when a legacy will be considered as intended by the husband to be a substitute for the wife's dower, and says the inquiry in such case is, "whether such an intention in the testator is to be collected by clear and manifest implication from the provisions in the will. To enable us to deduce such an implied intention, the claim of dower must be inconsistent with the will, and repugnant to its dispositions, or some of them. It must in fact disturb and disappoint the will." This decision is cited with approbation in Jackson v. Churchill, 7 Cow. Rep. 287. There it was said that every married woman has an interest in the lands of her husband, of which she cannot be divested but by her own act or consent; and if the husband make a provision for her by will, in lieu of dower, she may elect to take the testamentary, or claim the legal provision. If the provision in the will is not expressed to be in lieu of dower, but is an ordinary legacy or devise, she is entitled both to her dower and the interest under the will. But if the claim is inconsistent with the will and repugnant to its provisions, then we may infer an intention in the testator, that the provision in the will should be in lieu of dower. In such cases the widow must elect one or the other; but cannot have both: and if she enters upon the property given by the will and enjoys it, she is thereby barred of her dower. [See Van Orden v. Van Orden, 10 John. Rep. 30; Webb v. Evans, 1 Binn. Rep. 565; Green's Ex'rs v. Green, 7 Porter's Rep. 19; Ayres v. Willis, 1 Ves. jr. Rep. 230; Chalmers v. Storrill, 2 Ves. & B. Rep. 224; Wake v. Wake, 1 Ves. jr. Rep. 353; Arnold v. Kempstead, 2 Eden's Rep. 236; 1 Rop. on Prop. 556; Evans' Lessee v. Webb, 1 Yeates' Rep. 424; Duncan v. Duncan's Ex'rs, 2 Ib. 302; Hamilton v. Buckwalter, Id. 389; Sample v. Sample, Id. 433; McCullough v. Allen, et al. 3 Ib. 10; Clancy on Rights, &c. 230, et post.]

In Smith v. Knistern, 4 Johns. Ch. R. 9, a testator possessed of a large real and personal estate, bequeathed to his wife his household furniture, &c., and " her comfortable sup-

port and maintenance out of his estate, to be from time to time rendered and paid to her by his executors." *Held*, that this was not inconsistent with, and did not bar her claim to dower. So, where the testator, after disposing of real and personal estate to his sons and daughters, gave to his wife the remaining part of all his personal estate, and the benefits of all his real estate, till his sons came of age to enjoy their possession, it was decided that the devise to the wife was not "inconsistent with, or repugnant to her claim of dower, which the bounty of the law gives her." That there was "no *strong* and *necessary* implication that the widow should not have both her devise and dower." [McCullough v. Allen, et al. *supra*.] There are many other cases depending upon common law principles, in which the widow's right of dower is considered quite as favorable to her interest. Some of these are cited in this opinion. [2 Lomax's Ex'rs, 164 to 169.]

There are some decisions in which it is held that a devise cannot be averred at law to be in satisfaction of dower, if the will is silent; though equity, under the circumstances, has considered such devises as a substitute, and the wife has been decreed to elect under a knowledge of her testamentary rights. [2 Lomax's Ex'rs, 166, § 7, and cases there cited; Larrabee and wife v. Van Alstyne, 1 Johns. R. 306.] But see Kennenedy v. Mills, 13 Wend. R. 553.

Where the testator attempts to devise lands by a will not executed so as to pass them, and by the same will gives a legacy to his wife; in such case it has been determined, the widow will not be put to an election, but may take the legacy, without making good the devise. When a will is thus imperfectly executed, the devise of the freehold is to be deemed as blotted out of the will, and the will may be read as if it was not contained in it. [2 Lomax Ex. 165, § 5, and cases there cited,] In Cary v. Askew, 1 Cox's Ch. C. 241, two wills of the testator were established; the first was so executed as to pass the realty, while the latter was unattested, and of course operated on the personalty only. The effect of the first will was to cause an equal division of the lands between the testator's three daughters, but the last directed a division between the two eldest, and gave the youngest a pecuniary

legacy. The question was, whether the youngest daughter, (the plaintiff,) should have one third of the land and the pecuniary legacy also. It was argued that no election could be coerced, but the plaintiff might claim her share of the land under the first will, and her monied legacy under the second; for an unattested will is so completely void as to the real estate, that it cannot be read to raise the implied condition arising from the disposal of it. It is to all intents and purposes, as if no such disposal had been made, of the real estate, and the personal legacy had been merely given. [See Heart v. Greenback, 3 Atk. Rep. 715; Boughton v. Boughton, 2 Ves. Rep. 12.] *The master of the rolls*, after noticing the great respect due to the authorities which maintain the distinction between a condition annexed to a personal legacy, and a condition raised by implication from any part of the will, and the difficulty he should have had in making it, proceeds thus: " They have said you shall not look into a will unattested, so as to raise the condition which would be implied from the devise, if it had appeared; but if you give a legacy, on condition that the legatee shall himself give the lands, then he must elect: however, I am bound by the force of these authorities, to take no notice whatever of the unattested will, as far as it relates to the freehold estates, and therefore the plaintiff cannot be put to her election." Lord Eldon expressed himself in equivalent terms, in Sheddon v. Goodrich, 8 Ves. Rep. 481, 496-7, though he intimated that the reason of the distinction between a condition annexed to a personal legacy, and one implied, if *res integra*, would be questionable.

Although the testator gave to the wife real and personal estate in bar, full satisfaction and recompense of all dower, it was held, *in England*, that she was not barred as to property undisposed of, or as to a lapsed legacy, but she might claim a share of the same as a distributee. [Pickering v. Lord Stamford, 3 Ves. Rep. 335; 2 Lomax's Ex'rs, 205, § 10.]

In the case at bar, it is perfectly clear, that there has been no testamentary disposition of the testator's lands, and that the bequests of personalty are not made upon any express condition that the wife should yield up her right of dower. It is

perhaps the common sense interpretation of the will, that the title to the lands should vest in others, on whom the testator proposed to bestow his bounty, divested of his wife's claim; but the will being unattested, its provisions in respect to the freehold must be considered as blotted out. The testator then will be deemed to have died intestate as to the realty, and the question arises, whether, in such case, it was incumbent on the widow to have renounced under the statute, the provision made for her by the will, to entitle her to dower.

The act of 1806 enacts, that the widow may in all cases waive the provision made for her in the will of her deceased husband, and be entitled to her dower; "in which case she shall receive no part of such provision, unless it appears plainly by the will, that the testator intended it in lieu of dower." *Further*, if the estate of the testator or intestate is insolvent, the widow shall be endowed of "one-third only of the lands, tenements, and hereditaments, of her deceased husband," although there be no children or descendants of them. [Clay's Dig. 172, § 1, 2.] It is provided by the statute of 1812, that "when any person shall die intestate, or shall make his last will and testament, and not therein make any express provision for his wife, by giving or devising unto her such part or parcel of his real and personal estate as shall be fully satisfactory to her, such widow may signify her dissent thereto, in the circuit or county court in the county wherein she resides, at any time within one year after the probate of such will," and in that case she shall be endowed of one-third of the lands; and "and entitled to share in the personal estate in the following manner, to wit : if there be no children, or if there be but one child, she shall be entitled out of the residue left after paying the debts of the deceased, to one half: if there be more than one child, but not more than four, in that case she shall be entitled to a child's part; but if there be more than four children, then and in 'that case, she shall be entitled to one fifth part in absolute right." [Clay's Dig. 172-3, §§ 3, 4.] The act of 1835 declares that it shall be lawful for the widow to signify her dissent from the provisions of her husband's will, at any term of the orphans' court. [Cl. Dig. 300, § 20.] And by the act of 1806 it is declared, that the estate, both real and personal, not devised or bequeathed in

the last will and testament of any person, shall be distributed in the same manner as the estate of an intestate, and the same shall be administered by the executor accordingly. [Clay's 597, § 7.]

In Green's Ex'rs v. Green, 7 Porter's Rep. 19, it was held, that if the will makes no provision for the widow she may claim her dower without any express dissent from the will. And speaking of the mode in which her dissent must be signified, it is said, "Now as she cannot claim under the will, and assert her right to dower also, the assertion of one is precisely equivalent to the abandonment of the other." This latter remark is a mere *dictum*, and if it cannot be maintained in the broad terms in which it was made, we shall not accord to it the weight of authority.

We examined, in McLeod, et al. v. McDonnel and wife, 6 Ala. Rep. 236, to some extent, the effect of our statutes, where the widow was provided for by the will of her husband. There, the court declined considering, (as it was unnecessary) whether the section first cited of the act of 1806, "was intended to introduce a rule of construction different from that which previously obtained in equity, or was intended to relieve the widow from the consequences of an erroneous conception of her rights under the will." In respect to the act of 1812, we said "our impression was that the terms, *express provision*, was to be understood as directing an election only in case of a provision expressing to be in lieu of dower ; but further consideration has satisfied us that the evil intended to be obviated, was the difficulty which previously existed of ascertaining when and how an election was to be made by her. According to the course of equity law, the widow was entitled to an account before she was compelled to elect, and a suit in equity was frequently necessary to compel an election. This seems to have been the only change made by the statute in the existing law—a fixed, a definite term was introduced within which she is compelled to signify her dissent to the will ; and if this is not made, it then, if any provision is made inconsistent with her right under the statute, becomes obligatory on her." To sustain this view, Blunt v. Gee, 5 Call's Rep. 481 ; Shaw's devisees v.

Shaw's heirs, 2 Dana's Rep. 341, and Green's ex'rs v. Green, *supra*, are cited.

The Virginia statute, which has been supposed to be similar to our's, authorizes the widow, when dissatisfied with her husband's will, to renounce the provision which it makes for her, within one year from his death, &c. ; thereupon she shall be entitled to one-third of the slaves of which her husband died possessed, to hold during her life, and shall take such share of his other personal property as if he had died intestate, as her absolute property ; but if she fails to renounce within the time limited, she shall have no more of the slaves and other personal estate than are given her by the will. [1 Rev. Code of Va. ch. 104, § 26.] This enactment, it has been decided, relates only to personal estate : if therefore the widow does not renounce within the time, and according to the mode prescribed, she loses her distributive share of the personal estate, and is confined to the provisions of the will ; but is notwithstanding entitled to dower. [Dandridge v. Dorrington, 5 Call's Rep. 351 ; Blunt v. Gee, 5 Id. 481 ; Dupree v. Cary, 6 Leigh's Rep. 36 ; Thornton v. Winston, 4 Id. 152 ; Kennand v. Williams, 8 Id. 400 ; Mitchell v. Johnson, 6 Id. 461.] One of the cases cited shows, that if a testator by his will give real and personal estate to his testator, and leave part of his personal estate undisposed of, and the wife accept the provision made for her by the will, she shall be excluded from any share in the personal estate that is undisposed of ; and shall have no more of the husband's estate than was bequeathed to her. In another it is held, that if the husband devises away the wife's land, and gives her a legacy which she does not renounce, but files her bill, even within the year, for the recovery of the land by title paramount, in which she is successful, she can neither claim the legacy, nor a distributive share of the personal estate. She is excluded as to the former, because she recovered the land against the will, and as to the latter, because she did not renounce the testamentary provision. [See also, Taylor v. Browne, 2 Leigh's R. 419 ; Noel and wife v. Garnett, 4 Call's Rep. 92.]

The statute of Kentucky provides, that a widow who does not renounce the benefit which the husband's will proposes to confer upon her, " shall have no more of her husband's

*slaves* and personal estate than is given her by his will."
McCaus and wife v. Board's heirs, 1 Dana's Rep.   In Wood
and wife v. Lee, 5 Monr. R. 58, it was held that a widow
is required to elect between the provisions of the will
and the law as to chattels and slaves only, and that she
may have both her dower and what is devised to her, if she
do not claim under and against the will.   To the same effect
is Shaw's Devisees v. Shaw's Adm'r, 2 Dana's Rep. 341.
In this latter case it was said, that in England if the husband
dies intestate as to a part only of his personalty, a share of
that part goes to the widow ; though she takes a devise also,
if it does not appear from the face of the will that the provis-
ion was made in lieu of dower, but it is questioned whether
she is not cut off from such a claim by the statute of Ken-
tucky, unless she renounces the testamentary benefit.   This
point we have seen is expressly decided against the widow
in Virginia.   In the Kentucky case it was further said, that
the inadequacy of the provision made for the widow, by the
will of her husband, does not relieve her from  " the necessi-
ty of making the required renunciation."   [See also, Reed v.
Dickerman, 12 Pick Rep. 150.]   *Further*,  " it was not alone
for the purpose of divesting her of any interest she might
have under the will, that the law required her renunciation ;
but for the sake of distributees and legatees, in order that
there might be a speedy adjustment and distribution of the
decedent's estate, she was required, within a reasonable time,
to make manifest her determination not to abide by the will."
[See also Gore v. Stevens, 1 Dana's Rep. 203.]

The statute of Massachusetts is in terms almost precisely
the same as our act of 1806, and it has been determined by
the highest court in that State, that it reverses the common
law, which presumes a devise or bequest to a widow to be in
*addition* to her dower, unless it *clearly* appears that it was the
intention of the testator that it should be in *lieu* of dower.
She must therefore take the devise and bequests in a will of
her husband, unless she seasonably elect to waive them.   The
statute seems to presume an acceptance.   There is some pos-
itive act to be done by the widow, indicating her election
before she can be entitled to dower.   No precise time is pre-

scribed by the statute for her election, but she will be presumed "to have accepted the testamentary provision unless she waived it in a reasonable time, that the settlement of the estate might be closed, and distribution made among the heirs. [Reed v. Dickerman, 12 Pick. Rep. 146; see also, Merrill v. Emory, 10 Pick. Rep. 507; Delay v. Vinal, 1 Met. R. 57; Thompson v. McGaw, Id. 66.]

A statute of North Carolina, passed in 1784, enacts, "that if any person shall die intestate, or shall make his last will and testament, and not therein make an express provision for his wife, by giving and devising unto her, such part or parcel of his real or personal estate, or to some other for her use, as shall be fully satisfactory to her, such widow may signify her dissent thereto, before the judge of the superior court, or in the county court of the county wherein she resides, in open court, within six months after the probate of said will; and then and in that case she shall be entitled to dower," &c. [Rev. Statutes of N. C. 612, ed. 1837.]

This enactment was considered by the supreme court of North Carolina, in Craven v. Craven, 2 Dev. Eq. Rep. 338. There the husband made a will disposing of his personal estate only, out of which he had made a provision for his widow; but its nature and the proportion it bore to his whole estate did not appear. The question was, whether, as the wife had not dissented from the will, she should be endowed of the realty. It was said by *Gaston, J., arguendo*, that when the husband dies testate, without making any provision for his wife, she need not dissent from the will to entitle herself to dower, and he supposed that the point had been so ruled by the court in Miller v. Chambers, at a previous term. But in the case then before the court, a provision was made for the widow, consequently something from which she might dissent, and if she so elected, take it, in preference to what the law would give. The gravamen of the argument in that case may be thus condensed—the act recognized the widow as having a perfect right to a part of the land, as well as the personal property of her husband; these are regarded as distinct funds, and whatever may be the value of the legacies given her, or however far it may exceed that of a distributive share, she is nevertheless entitled to dower in the land; that

she may be saved the unnecessary inquiry with respect to her share of the personal property, when satisfied therewith, and dissent only in respect to the *insufficiency* of the land given her; and when personalty *alone* is bequeathed, her omission to dissent amounts to no more than an acknowledgment that she does not complain in that respect. In considering the argument, the court say it has been attentively examined, but has not induced the adoption of the conclusion it proposed to establish. *Further*, the legislature, by the act of 1784, substitute a new rule more absolute and universal than that recognized at common law. "They made every case of a testamentary disposition by a husband in favor of his wife, a case of election—whether the provision in real or personal estate was made to her, or to some other person for her use, whether the intent that she should take it in lieu of her dower, was expressed, or not expressed; and whether it could be implied, or could not be implied, from the structure and language of the will. And to remove all dispute as to the fact of her election, they declared her to have elected to take under the will, unless her refusal so to take was manifested within a prescribed time, by a solemn dissent in open court." The widow could not, under the act of 1784, hold the personal property given to her, and get dower by law. "Unless she dissented, the will regulated the extent of her claims upon the estate of her husband: and if she dissented, the law prescribed what should be their extent."

It was further said, that the widow's right to dower was paramount to the claims of her husband's creditors; and will be operative, even against the alienee of the heirs—the time within which it must be asserted, is not prescribed by a statute of limitations. Justice and the repose of the community require that it should be ascertained as speedily as convenience will permit, whether the lands of a deceased man in the hands of his heirs and devisees, are, or are not, subject to this incumbrance. "The law has defined the time, and prescribed the mode when and how this fact can be certainly known. The most obvious considerations of public policy forbid, without the clearest warrant, judicial expositions which will have a tendency to defeat this great purpose of the law." The right to dower was consequently denied.

See Pettijohn v. Beasely, 1 Dev. & B. Law. Rep. 254; Bray v. Lamb, 2 Dev. Eq. 372; Sanderlin v. Thompson, 2 Id. 539.]

We think it altogether clear, as it has been held in Massachusetts, under a similar enactment, that the act of 1806, reverses the rule of the common law, which presumes a devise to be in addition to dower, unless the reverse clearly appears; that the widow must take the testamentary provision unless she *seasonably* elect to waive it; no precise time being prescribed, the election must be made in a *reasonable time.* The statute presumes consent, unless the widow repudiates the provision made by the will, and insists upon her dower. These conclusions seem to us to result so clearly from a consideration of the common law in connection with the statute, that they require not the aid of argument to prove them.

Our act of 1812, provides, that if a testator shall not make any express provision for his wife, by giving and devising "*unto her*" such part of his "*real and personal estate*, as shall be satisfactory unto her, she may signify her dissent, &c;" while the statute of N. Carolina, from which it was certainly borrowed, uses the terms "real *or* personal estate;" and the testamentary gift *or* devise, which she is required to renounce shall be made, not only to herself directly, but to any one for her benefit. The difference of phraseology we think, does not warrant a different interpretation, and the learned judge who delivered the opinion in Craven v. Craven, lays no stress upon the disjunctive which connects the words *real* and *personal.* These are used merely as generic terms, and as a prefix to the word estate—they mean nothing more when taken in connection with what follows, whether coupled as in our statute, or in that of North Carolina, than a provision in property. If they were construed otherwise, then according to our act, the consequence would be, that where only real *or* personal estate was devised or bequeathed, the wife should not be required to renounce, and could only be put to her election where the testamentary provision embraced both descriptions of property. Such a construction would oppose the obvious intention of the legislature, and would limit, if it did not entirely annul the act of 1806. In respect to the

other difference in terms, we think it does not extend the scope of the North Carolina act.   Our statute in providing for a renunciation where a devise or bequest is made to the wife, clearly embraces the case where a trustee for her benefit is interposed.

If the act of 1806 furnishes the rule of decision, it is clear that the widow lost her right to dower by the failure to waive the provision made for her in the will; for it does not *plainly appear* "by the will, that the testator intended it in addition to her dower."    And if the act of 1812 be looked to, the same consequence follows the omission to signify her dissent within one year after the probate of the will.    This view is decisive of the case, and our conclusion is attained without reference to the attempted devise of the realty ; for thus far we have seen the will is inoperative.

It is not necessary to consider, whether the act of 1806, is not unimpaired by that of 1812, and whether the principal effect of the latter is not to limit the time, &c. within which the widow is to signify her dissent.    Our statutes in respect to dower are to be considered as parts of an entire system, and to be construed in *pari materia*.    It may therefore be worthy of consideration in a proper case, whether the act of 1812 should not be differently interpreted, when taken in connection with that of 1806, than it would be if it stood alone. We make these latter remarks merely to exclude a conclusion, and not with the intention of intimating any impressions of our own.    We have but to add, that the judgment of the circuit court is affirmed.

ORMOND, J.—I dissent from the opinion of the court just pronounced—as I am unable to perceive any sufficient reason for the construction put upon the statute.    The statute declares, that when the husband does not make a provision by will, giving to the widow, "such part or parcel, of his real and personal estate, as shall be fully satisfactory to her," she may signify her dissent, &c.    I do not think we have any authority to hold, that by the term *and* the legislature meant *or*.

In applying the rules of construction to a statute, in such a case as the present, it is like any other written instrument, from which we are endeavoring to educe the writer's meaning.

*Prima facie*, he is always understood to mean what his language imports.   If the literal construction is insensible, if it leads to an absurdity, or renders the entire instrument, or any part of it, null, then we endeavor to reconcile such obnoxious part with the residue, and thus if possible ascertain what the author meant.   If the writing is sensible as it stands ; if there is no repugnancy in its several parts, I know of no authority for rejecting a part, and  substituting something else, so as to give it a meaning different from that which its plain language imports.   This  statute is perfectly sensible as it stands.   It declares that the widow shall not be required to dissent, unless a satisfactory provision is made for her, of real *and* personal property. . This is not repugnant to, or inconsistent with any other part of the statute, and if inconsistent with the previous act, according  to well established  principles, it is a repeal of that portion of the previous act.   It appears to me therefore, we have no authority whatever, but mere conjecture, to say, that the legislature meant  that a provision of either real, or personal estate, would bar the widow, unless she dissented within a year,  when  the statute declares, the provision must be both of real and personal estate, to produce that result.

In looking into the cases, when the word *or*,  has been taken to mean *and*, and the converse, I find  the reason given to be, that otherwise the instrument would be void for uncertainty, and that it is never done when it admits of a sensible construction as it stands.   [McGraw v. Davenport, 6 Porter, 352; Richardson v. Spragg, 1 P. Will. 434; Nicholls v. Tolley, 2 Ib. 389, and cases cited in note.]

For these reasons, I am of the opinion we have no authority to interpolate the statute, and substitute or, for and.