## McMEKIN v. BOBO, Adm'r de bonis non.

1. Where the allegations of a petition for leave to sell the land of a decedent are denied by the answer, the necessity for the sale must appear upon the record by depositions taken as in chancery cases.

2. The testimony of one witness, is not sufficient to outweigh the denial of the answer. The statement of a witness that there was a note against the deceased, in the hands of an attorney, upon which suit had been brought against the administrator, is not sufficient, without proof of the genuineness of the signature, or the liability of the estate for its payment.

3. The costs of the probate of a nuncupative will, cannot, whilst the probate is in litigation, be considered a debt for which the lands of the estate may be sold by order of the orphans' court.

Writ of Error to the Orphans' Court of Franklin.

The defendant in error filed his petition in the orphans' court, alledging that there was "not sufficient personal estate of the decedent in this State," within his knowledge "to pay off and discharge the debts and legacies due from said estate to his creditors." He then designates certain tracts which he affirms that the intestate owned in fee simple, at the time of his death, which he prays may be sold under an order of the court, "to pay the debts of said decedent's estate." The petition then states the names of the intestate's heirs, their ages and residence.

Thereupon the court made the usual order of publication for forty days. The heirs of the intestate answered the petition at length, and objected to a sale of the lands. 1. Because the intestate left a personal estate, consisting of slaves, money, evidences of debt, &c., amounting in value to $9,075 25—a sum more than sufficient to pay all the debts of decedent, with the expenses of settling his estate and all legacies; that in September, 1843, letters of administration were granted to Nathaniel L. McMekin, and the personal estate went into his hands to be administered, that he executed the

proper bond, and himself and sureties are abundantly able to respond to all liabilities. 2. Because on the 8th January, 1844, that administrator made a final settlement in due form with the orphans' court of his administration of the estate, when there appeared to be in his hands an excess of money amounting to $600, at least, beyond all expenses and debts, which under an order of court " was distributed to the heirs." 3. Because, on the day of the settlement of the estate, the orphans' court appointed "commissioners to divide and distribute the personal estate of the deceased among his heirs," and that personal estate appraised at $9,000 was thus distributed. 4. Because the heirs had, previous to the appointment of an administrator *de bonis non*, sold the lands in question to Wm. Sugg. 5. Because the deceased left a widow named Elizabeth McMekin, who is not made a party to the petition. 6. Because the will of the deceased, (if any existed,) touching which administration with the will annexed was granted to the petitioner, was a nuncupative will, not made as the statute requires, in order to pass lands, and the lands could not be adjudged to be sold to pay the legacies which it possessed to give; and that there are no debts or liabilities of the estate which would require a sale. 7. Because to the application for the order of sale, A. C. McMekin, one of the heirs, filed his bill in chancery, for the purpose of setting aside the pretended probate of the supposed will, on which bill process issued, and suit is still pending. Suits are also pending at law against the sureties in the administration bond of N. L. Mekin.

The answer concludes with a demurrer to the petition, assigning as causes—1. That it does not alledge that the personal estate of the deceased was not sufficient for the payment of the just debts with which it is chargeable. 2. That it does not alledge that the real estate cannot be fairly, equally, and beneficially divided amongst the heirs or devisees.

In their response, the heirs refer to the records of the orphans' court, &c. to sustain the allegations which they aver rest upon such proof—some of which are exhibited as part of their answer.

The deposition of J. H. Trimble was taken at the instance

of the petitioner, in which the witness states that more than two hundeed dollars are due to the officers of the orphans' court, from the estate of the deceased, which "accrued in the probate of the last will and testament of the decedent ;" that there is also a legacy of two thousand dollars due and unpaid under that will, to Andrew McMekin, which will appear by reference to the will admitted to probate on the 5th March, 1844.    There is also a claim, purporting to be a note of the decedent, in the hands of S. R. Cockrell.   In whose favor this claim is, witness does not recollect, but suit has been brought on it by Cockrell against the petitioner, as administrator *de bonis non* of decedent's estate.    Witness also states, that he knows of no personal estate of the decedent in the State of Alabama, but from what he does know, believes there is no such estate therein.

Thereupon the judge rendered his decree, stating that it appeared  "to the satisfaction of the court, from proof regularly taken by deposition, as well as from the exhibition of a certain note, purporting to have been executed by said decedent, that the estate of said intestate is indebted." It is then ordered, that the administrator proceed to sell five "distinct parcels of land, which in the aggregate, according to the usual government surveys, contain about three hundred and and twenty acres.

W. Cooper, for the plaintiff in error, insisted, that the petition was defective in asking a sale of the lands, not only to pay debts, but legacies also ; that to satisfy the latter, the statute did not authorize the orphans' court to decree a sale of the lands of a decedent.    But if it did, there was no evidence that there was a will of any description ; that the petitioner did not describe himself as executor, or as administrator with the will annexed.    If there was a nuncupative will, it must be inoperative, as it respects the lands of the testator ; because the statute requires that a will, to have that effect, should be signed by the testator, and attested by at least three witnesses.

There was no proof of the indebtedness of the estate to any extent, or if any, not enough to absorb the entire personal estate, which was first liable ; and therefore the court

should not have directed the sale of the lands.    But if the evidence authorized a decree in favor of the petitioner, the decree itself is erroneous in directing a sale of all the lands— it should have ascertained the extent of the indebtedness, and then have ordered a sale of so much of the land as it was necessary to sell in order to pay the debt.

For any thing appearing to the contrary, the personal estate was ample, and if not in this State, it may have been elsewhere under the control of the administrator, and on this point, both the petition and proof are at fault.    The counsel cited Ram. on Assets, 86, 94, 228, 230; 3 Johns. Ch. Rep. 319; 4 Porter's Rep. 52, 60; 1 Stew. Rep. 429; 2 Ala. Rep. 662; Clay's Dig. 225, § 19; 11 Wend. Rep. 361; Toller's Ex'rs, 225; 9 Porter's Rep. 697; 8 Id. 380; 3 Id. 9, 26 to 31; 7 Id. 541; 3 Ala. 316; 5 Id. 347; 7 Id. 256; 2 Stew. Rep. 420, 423; Ram. on Assets, 109, 130; Toller's Ex'rs, 7; 2 Atk. Rep. 272; 14 Mass. Rep. 421; 4 Conn. Rep. 536; 8 Id. 5; 10 Wheat. Rep. 229; 1 Vernon's Rep. 336; 1 P. Wms. Rep. 505; 2 Ball & B. Rep. 49; Chit. on Con. 6, 7; 18 Johns. Rep. 145; 1 Chit. Prac. 104, *et seq.;* Swimb. on Wills, 18; 2 Kent's Com. 444; 1 P. Wms. Rep. 404; 1 Ves. Rep. 546; 3 Binn. Rep. 366.

J. A. NOOE, for the defendant in error.

COLLIER, C. J.—It is declared by the act of 1806, that the goods and chattels, or personal estate of any person deceased, whether testator or intestate, shall stand chargeable with the payment of all the just debts and funeral expences of the deceased, and the charges of settling the estate; and after payment thereof, in case of intestacy, shall be distributed.    If the personal estate is insufficient to pay the debts, then the real estate shall be chargeable with the deficit. [Clay's Dig. 191, § 1.]    The act of 1822, provides that it shall be lawful for an administrator, for the purpose of paying debts, or to make more equal distribution among the heirs, to file a petition in the orphans' court of the county in which letters of administration have been granted, setting forth that the personal estate of the intestate is not sufficient for the payment of the just debts of the intestate; or that the real

estate of the intestate cannot be equally, fairly and benefi-cially divided among the heirs, without a sale of the same, setting out and particularly describing in such petition, the estate proposed to be sold, and the names of the heirs and devisees of such intestate, &c. [Clay's Dig. 224, § 16.] By a statute passed in 1828, it is provided that, whenever an ad-ministrator shall fail to apply to the orphans' court for the sale of the real estate of his intestate, for the purpose of paying the debts, the judgment creditor, upon filing a suggestion in the clerk's office in which the judgment shall have been ren-dered, that real estate has descended to the heirs, and that a sale of the same or some part thereof, is necessary for the sat-isfaction of such judgment, and that the administrator has failed or refused to make application for the sale thereof, &c. may sue out a *scire facias* against the administrator and heirs, returnable to the next term, &c. requiring them to show cause why the plaintiff should not have execution against the real estate; and if sufficient cause to the contrary be not shown, execution shall be awarded against such es-tate: Further, if an administrator shall fail to apply for leave to sell real estate three months after reporting the estate in-solvent, he shall be deemed guilty of a *devastavit*, and may be sued on his bond, together with their sureties. [Clay's Dig. 197, § 27.]

In Thrash v. Sumwalt, 5 Ala. Rep. 13, it was said that "an administrator is bound to a creditor of the intestate, in consequence of the assets which come to his hands to be ad-ministered; and a distributee has no claim whatever, until the demands of all creditors are satisfied or legally barred." He cannot, therefore, discharge himself or the assets from liability to the creditors by a premature settlement with the distributees, or by a decree of the orphans' court directing distribution. To the same effect, is Dean, et al. v. Portis, Judge, &c. 11 Ala. Rep. —.

In the case at bar, the record establishes that the personal estate of the intestate was ample for the payment of its debts; that the first administrator, within two months and a half after his appointment, filed his account and vouchers for a final settlement, and that in little more than four months, the account was allowed, and a decree rendered distributing

the personalty.    In about eleven months after the settlement, and distribution, the defendant in error was appointed an adm'r *de bonis non.*  It may well be asked under this state of facts, if the personal estate was insufficient to pay the debts.    If it was not, where was the necessity for selling the lands, and does the act of 1822, furnish an authority for the decree of the orphans' court ?    Does the premature settlement and distribution discharge the first administrator and his sureties from liability to creditors ?    We merely state these questions, but do not propose to answer them, as we can rest our judgment upon another ground.

The fourth section of the act of 1822, above cited, provides, that the orphans' court shall not order a sale of the real estate described in the petition, where the allegations are denied by the answer, unless satisfied by proof to be taken by deposition as in chancery cases, and filed in the cause.— [Clay's Dig. 225, § 19.]   In Hill and another v. Hill, adm'r, 9 Ala. Rep. 793, we said this provision was too explicit to leave room for doubt as to its true meaning ; that it required depositions to be taken and filed, as in suits in chancery.   It was not enough, that the decree recited, it appeared to the court by "interrogatory," that the personal estate of the intestate was insufficient to pay the debts with which it was chargeable, where the record contained no depositions, did not account for their absence, or show that any had been taken.

In the case before us, there was  but one deposition taken to sustain the allegations of the petition.   The answer of the heirs explicitly denies that there is any indebtedness which makes it necessary to sell any part of the real estate of the intestate ; insists that the will, in respect to which the witness Trimble testifies, was not written, but attempted to be established as a nuncupation ; and as such, cannot affect or charge the lands.   The costs, which the witness testifies are due, accrued on the probate of this will ; and the answer avers that the validity of the same is now controverted by suit in chancery, and offers to exhibit the papers in the cause.

Even if land passed by a nuncupative will, or could be charged by it with the payment of legacies, [Hilliard and wife v. Binford's heirs, &c., 10 Ala. Rep. 977,] it may be re-

35

marked, that the statute cited, does not authorize the or-
phans' court to order the sale of real estate for the payment
of a legacy ; and if it did, the petition does not ask it for that
purpose.

Can real estate be sold for the payment of the costs con-
sequent upon the probate of a nuncupative will ?  Whatever
answer this question may receive, we think these costs can
not, while the probate is in litigation, be considered a debt
for which the lands of the estate may be sold under an order
of the orphans' court.

The proof in regard to the indebtedness of the estate by
note, is not sufficient ; especially where the answer denies
the *gravamen* of the petition.   The witness knows nothing
of the genuineness of the note, but merely states that there
is a claim purporting to be a note of the deceased, in favor of
whom he does not know, in the hands of an attorney for col-
lection, and that suit has been brought thereon against the
administrator *de bonis non.*   The decree on the petition
merely states in addition, that this note was produced in the
orphans' court.  If the positive testimony of one witness was
sufficient to outweigh the answer as to the fact of indebted-
ness, it might be objected to the deposition in the present
case, that it does not affirm that the note is genuine, or state
any thing as to the liability of the estate of the deceased to
pay it.   The fact that the note was produced in court, if it
be proved by the recital, does not aid the deposition ; for ta-
ken alone, or in connection with the deposition, it does not
show a charge upon the estate.   This much should have
been shown by proof, which would be satisfactory, where there
was a negative answer in a chancery cause.

Without stopping to consider the other questions raised at
the argument or by the answer, we think the proof too de-
fective to sustain the decree.

The decree is therefore reversed, and the cause remanded.